NS

Mar 30, 2006

Honorable Norma L. Shapiro
United States District Court
10614 U.S. Courthouse
601 Market Street
Philadelphia, PA. 19106-1765

16

Re: Murray vs Weinstein et al,
Civil Action No. 05-

FILED
APR 1 2006
MICHAEL E. KUNZ, Clerk
By____ Dep. Clerk

Dear Judge Shapiro:

I concur with the Assistant U.S.
Attorney Gerald B. Sullivan that the
race-base complaint should be dismissed

The EEOC advised me that the charge
should be unwarranted harassment. My
race and religion are the motivating facto
for the harassment and unlawful terminat

I apologize for my lengthly response
to the U.S. Attorney's correspondence of
March 29, 2006. I am trying to defend
myself without counsel against the most
powerful government in the world that
is mistreating me. I am a college graduate
with no criminal rec. I am q college graduate



**U.S. Department of Justice**

*United States Attorney*

*Eastern District of Pennsylvania*

*Gerald B. Sullivan*
*(215) 861-8786*
*FAX: (215) 861-8349*
*Gerald.Sullivan@USDOJ.gov*

*615 Chestnut Street*
*Suite 1250*
*Philadelphia, Pennsylvania 19106-4476*
*(215) 861-8200*

March 29, 2006

<u>**VIA HAND DELIVERY**</u>
Honorable Norma L. Shapiro
Senior Judge, United States District Court
10614 United States Courthouse
601 Market Street
Philadelphia, PA 19106-1765

      Re: **Murray v. Weinstein, et al.**
          <u>**Civil Action No.: 05-cv-4557**</u>

Dear Judge Shapiro:

    I enclose in the above-referenced action courtesy copies of:
(1) my Entry of Appearance on behalf of defendants John McEvoy
and David Roland (I previously entered my appearance on behalf of
defendant Allen Weinstein); and (2) the Government's Motion to
Dismiss, with supporting memorandum of law and exhibits. For
Your Honor's convenience, I enclose two courtesy copies of the
motion papers (which seek dismissal of defendants McEvoy and
Roland as well as of plaintiff's race-based discrimination
claim), with copies of the supporting exhibits stapled to one
such copy and detached from the other.

    The originals of all of these documents were filed
electronically with the Clerk this afternoon.

                Respectfully,

                PATRICK L. MEEHAN
                United States Attorney

                GERALD B. SULLIVAN
                Assistant United States Attorney

Encls.
cc: Mr. Darryl Murray, *pro se* (w/ encl.)
    112 W. Champlost Ave.
    Philadelphia, PA 19120

Apr 3, 2006

Memo

To    Honorable Judge Norma L. Shapiro
      Senior Judge  U.S. District Court
      10th United States Courthouse
      601 Market Street
      Philadelphia, PA. 19106-1765

From: Plaintiff Darryl Murray

Re.  Murray vs Weinstein et al
     Civil Action No. 05 cv-1557

There is no documentary evidence to support the allegation that I repeatedly ignored instructions by NARA officials to cease posting in the workplace posters, signs, flyers, newspaper clippings, and other materials containing racial, political, and religious statements that were offensive

A former employee Ms Gloria Gruzas was given a letter dated Mar 28, 1995. This letter was prepared by Human Resources and former Director David S. Weber. Poor Ms Gruzas was forced to sign this letter and retaliated by transferring back to NARA in St. Louis where she originally worked to avoid coercive misconduct by David S. Weber

Poor Ms Gruzas never even presented me with this letter, I respect her for that.

Former Asst Director Daniel Bennett was given the assignment to present the letter to me. Mr. Bennett was a good friend of mine; I don't remember if I ever signed a receipt that I received. The allegations in the letter are false. I left one Islamic newspaper article on a desk in another agency's breakroom after eating lunch.

On April 12, 1996 Mr. David S. Weber and I made an agreement that I would not read Islamic newspaper articles in the workplace any more to keep the Catholics off my personal business.

Mr. Sullivan's assertion that I continue to post offensive items to Catholics on Aug 17, 2004 when I was ordered yet again, 9 years later -- this time by my new supervisor Ms. Elizabeth Washington is untrue.

This time Director John McEvoy had Human Resources prepare a letter for him and a Catholic coworker I was feuding with. Mr. McEvoy had Ms. Washington sign the letter and present to me. I have always had an excellent relationship with everyone of my immediate supervisors who have been Catholic and Jewish. My annual appraisals and cash awards testify to this fact.

In Ms. Washington's affidavit to EEOC she stated that she knew nothing about the letter. She signed or any complaints coming thru the chain of command.

My beloved supervisor Ms Washington previously notified Director John McEvoy that the Catholic complainant and I had developed a bad relationship, (she called it a personality conflict), and were on bad terms.

The complainant notified Mr McEvoy, another Catholic that he was offended that I would claim Osoma bin Laden was a patsy and framed for the 9/11 attack.

The complainant and Mr McEvoy then secretly and maliciously conspired to deprive me off my livelihood.

My placement on administrative leave and being ejected from the facility's parking lot after responding to my coworkers concern for my welfare.

This caused me to make the inappropriate comment to my former friend of 25 years security guard James Hughes, that, "Somebody ought to knock down the building." I was advised to not repeat that to anyone. I left the premises immediately to prevent further confusion.

I suggested several meetings with NARA officials to explain and apologize for the inappropriate comments to security personnel regardless of my personal relationship with Mr. James Hughes.

Fear and hatred of Muslims and Islam is no justification for destroying a 17 yr federal employee's life under these circumstances.

NARA officials violation of agency policy, my constitutional rights, and National agreement to allow me to make an oral response when facing termination has affected the morale in the workplace. NARA is no longer believed to be an Equal Opportunity Employer in the Federal government.

Giving me the death penalty with the extenuating circumstances involved with this case after 17 years of dedicated service evidenced by 17 annual appraisals and cash awards for my contribution to the efficiency of the service is a crime of unjust bigotry. Until Protected Classes are better represented in the federal workplace at NARA, the court system and the U.S. Attorney must help me

Memo

To: Honorable Judge Norma L. Shapiro
United States District Court
10614 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1765

From: Plaintiff Darryl Murray

Date: Mar 30, 2006

Re: Murray vs Weinstein et al
Civil Action No 05-4557

This is a statement written by coworker Ms Vanessa Adams at the request of NARA Director John McEvoy.

This statement along with other documentation included in the EEOC's Report of Investigation refutes security guard James Hughes' contention that I tried to enter NARA's facility threatening to bomb the place.

I was on administrative leave with full pay at the time. I had no motive + the

Dear McEvoy

I recive a phone call From Darrly 9-22-04 around 8 or 9 am asking for you phone Number. I ask him how are he doing he said he was Fine. It was just a missunderstanding He will be back by next week.

Then I receive a phone call from him about 10:30 am. He was asking to speak to skip. I told him he was on the floor, he ask me to page him and ask him to meet him at the front gate. I page skip about three time and didnot get NO answer.

Skip came up to the Front Desk about a half hour later and ask me who wanted him and I told him it was Darryl but he left. Skip said that he will call him at home.

Venessa Adams

CA

Memo

To: Honorable Judge Norma L. Shapiro
United States District Court
1661 U.S. Courthouse
601 Market Street
Philadelphia, PA. 19106-1765

From: Darryl Murray

Date: Mar 30, 2006

Subject: Murray vs Weinstein et al.
Civil Action No 05-4557

Please note that the National Archives and
Records Administration failed to identify a
single offensive item displayed on my desk
when interviewed by the EEOC at my request.

I believe the charge of insubordination
will be found to constitute nothing but
harassment motivated by a fear and hatred
of Muslims and the Islamic religion.

I further believe that the charge of
making a threatening remark will be found
questionable, if not incredible, due to

eyewitness testimony as well as the fact that my former associate/friend security guard James Hughes failed to notify the official in charge Assistant Director Dan Bodesine of the Federal Protective Service at the time of the incident. Mr. James Hughes opted to wait several hours for Director John McEvoy to arrive at the workplace.

Mr. John McEvoy approached the security guard after learning that I visited the building that day, asking him why I was there. Mr. James Hughes then alleged that I threatened to blow up the place and return to the facility.

I only commented to my friend of 2½ years, in confidence, that somebody ought to nuke the place for their mistreatment and exploitation of the African American employees.

I never threatened to do any such thing and cannot understand why he would misquote me and betray my confidence knowing that I needed my job to support my family. I can only speculate as to his motives.

Memo:
Date: 02-02-06
Subject: Merits of case CV05-4557

I expect the court to find security guard
James Hughes' affadavit to be questionable if
not incredible for the following reasons:

A) Mr. Hughes waited several hours to report
his allegation of a threatening remark.

B) Mr. Hughes neglected to inform Asst. Director
Don Becksom to take defensive action to secure
the building and protect the employees.

C) Mr. Hughes' allegations are refuted by an
eyewitness employee of NARA.

I expect the court to find harassment and
infringement of my constitutional rights to
freedom of speech and freedom of expression.

A) The insubordination charge is frivolous,
malicious, and the result of hostile sentiments
towards the Islamic religion.

I expect the court to find evidence of misconduct on NARA's behalf for the following reasons

A) Coworker complaint not filed through the proper chain of command. Complaint could have been resolved at a lower level.

B) Manipulation of evidence and witnesses. Failure to identify offensive materials, Forcing supervisor to sign letter she didn't write.

C) Allegations from management of my association with Osama bin Laden and Al Qaeda. This is slander and character assassination.

I expect the court to find misconduct on NARA for the following.

A) Violation of Disciplinary Guide procedures. The Administrative Leave letter of Sept 16, 2004 failed to list any specific charges.

B) Failure to allow me to make an oral statement in my defense. Failure to participate in ADR.

C) Failure to conduct an investigation prior to Sept 16, 2004

I expect the court to find evidence of the following

A) The prohibition against my reading materials in a private work area constitutes harassment

B) Past efforts by NARA to suppress my advancement opportunities. Failure to promote over less qualified employees

C) Disciplinary actions involving loss of pay for questionable acts of misconduct were maliciously motivated

D) Malice on NARA's behalf involving the use of threats and intimidation of witnesses. Specifically Ms Irene Jones & Liz Washington.

E) Attempt to build a case against me using past incidents unrelated to the current charges against me.

F) NARA's bad faith & behavior is unfair, unjust and unlawful.

# TEMPLE · UNIVERSITY

### OF·THE·COMMONWEALTH·SYSTEM·OF·HIGHER·EDUCATION

BY·AUTHORITY·OF·THE·BOARD·OF·TRUSTEES·AND·UPON·RECOMMENDATION

OF·THE·FACULTY·HEREBY·CONFERS·UPON

## Darryl Murray

THE · DEGREE · OF

## Bachelor of Arts

TOGETHER·WITH·ALL·THE·RIGHTS·PRIVILEGES·AND·HONORS·APPERTAINING
THERETO · IN · RECOGNITION · OF · THE · SATISFACTORY · COMPLETION
OF·THE·COURSE·PRESCRIBED·BY·THE·FACULTY·OF·THE·UNIVERSITY
IN · TESTIMONY · WHEREOF · THE · UNDERSIGNED · HAVE · SUBSCRIBED
THEIR · NAMES · AND · AFFIXED · THE · SEAL · OF · THE · UNIVERSITY
GIVEN · AT · PHILADELPHIA · PENNSYLVANIA · ON · THIS · TWENTY · FIRST · DAY · OF
MAY · NINETEEN · HUNDRED · AND · EIGHTY · SEVEN



CHAIRMAN · OF · THE · BOARD · OF · TRUSTEES

SECRETARY · OF · THE · UNIVERSITY

PRESIDENT · OF · THE · UNIVERSITY

DEAN

**GERMANTOWN** HIGH SCHOOL YEAR ENDING **JUNE 196_**

REPORT OF **MURRAY DARRYL**

PUPIL NO. **212-472-9** CURR. GRADE **12** GROUP NO. **109**

ADVISER **WEIMER** PRINCIPAL **WALTER J SCRIVEN**

## EXPLANATION OF RATINGS

### SUBJECT

Achievement in relation to work planned for the subject, including use of time and materials, neatness and care in work, preparation for and participation in class work. Ratings from beginning of year to date.

### BEHAVIOR

Obedience to regulations, respect for property and rights of others, honesty, truthfulness, courtesy, effort.

### SUBJECT RATING SCALE

A — Excellent
B — Good
C — Average (Fair) — Lowest
   Certification mark for
   college
D — Clearly below average
   (barely passing)

E —
F — Failing - Subject may have to be repeated
F — Failing - Pupil may be prohibited from repeating subject
P — Passing

| BEHAVIOR RATING SCALE | Parent-Teacher Conference Date |
|---|---|
| 1 — Excellent | |
| 2 — Satisfactory | |
| 3 — Unsatisfactory | |

SIGNATURE OF PARENT OR GUARDIAN

Your signature above indicates that you have examined the report; it does not necessarily signify your approval.

Please Read the Other Side of this Report Carefully



THE SCHOOL DISTRICT OF PHILADELPHIA

FORM 8619C-(1/79) PUPIL'S REPORT, SENIOR HIGH SCHOOLS AND AREA VOCATIONAL-TECHNICAL HIGH SCHOOLS

ATTENDANCE INCLUDES

| SUBJECT | PERIODS PER WEEK | FIRST REPORT GRADE | FIRST REPORT BEHAV. | SECOND REPORT GRADE | SECOND REPORT BEHAV. | THIRD REPORT GRADE | THIRD REPORT BEHAV. | END OF YEAR GRADE | END OF YEAR BEHAV. |
|---|---|---|---|---|---|---|---|---|---|
| ENGLISH 4 * | 05 | B | 1 | B | 1 | B | 1 | B | 1 |
| SOC SCI * | 05 | B | 1 | B | 1 | B | 1 | B | 1 |
| HUM PROB | 05 | C | 1 | B | 1 | B | 1 | B | 1 |
| AFRAM HIST | 05 | B | 1 | A | 1 | B | 1 | A | 1 |
| SPANISH 4 | 05 | B | 1 | A | 1 | A | 1 | A | 1 |
| PHYS ED | 03 | | | C | 2 | A | 1 | A | 1 |
| HEALTH 4 | 01 | | | B | 1 | A | 1 | A | 1 |
| CHORUS 4 | 01 | | | A | 1 | A | 1 | A | 1 |

MERITORIOUS WITH HIGHEST PREPARATION HONOR HIGH

A general Rating of Pupil's Behavior as a Citizen in Homeroom, School & Community.

| | | | | |
|---|---|---|---|---|
| | 1 | 1 | 1 | 1 |
| GRADE NEXT YEAR | | | | |
| DAYS PRESENT | 37 | 75 | 117 | 172 |
| DAYS ABSENT | 1 | 7 | 11 | 12 |
| TIMES LATE | 0 | 0 | 0 | 0 |



# National Archives and Records Administration

MID ATLANTIC REGION
14700 TOWNSEND ROAD
PHILADELPHIA, PENNSYLVANIA 19154-1025
http://www.nara.gov

Date: 01 July 1998

Subject: Letter of Recommendation

To whom it may concern;

Let it be known that I have had the privilege of working with Mr. Darryl Murray. He is among the very few top-notch employees that provides both excellent internal, as well as external, customer service.

His ability and willingness to perform any job, with minimal training and without regard to difficulty, makes this employee a prime candidate for any business situation.

There have been countless times when Mr. Darryl Murray has assisted me in difficult situations only to sacrifice himself through missed breaks, shortened lunches, and extended hours at the job site. This is the kind of employee that every supervisor needs as an assistant.

Waste no time contemplating whether(or not) you should hire this individual. You may never again be in a position to hire such an outstanding individual for your company's staff.

I definitely would re-hire Mr. Darryl Murray anytime. Do not miss your chance.

Sincerely,

Andrew J. Ruesche,
Supervisory Archives Specialist
(314) 425-5762

# PAY AND LEAVE STATEMENT

| | | |
|---|---|---|
| BLOCK NO | AGY/ | EMPLOYEE NAME |
| NO508 | MURRAY, DARRYL | |

| SCHED NO | PAY PLAN | GR/ST | | SCHED | | RETAIN | | SSN | RET | RET % |
|---|---|---|---|---|---|---|---|---|---|---|
| 0000 | GS | 03/06 | | | | | | 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 | K | .00800 |

| EXEMPT | M/S | OPT | | EXEMPT | M/S | | EXEMPT | M/S | OPT | LOCAL TAX |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | S | | | 00 | S | | 00 | S | | |

FEDERAL TAX          STATE TAX

| TSP ERATE | TSP EAMT | | TSP BASE | | TSP PRORATE G | | TSP PRORATE F | | TSP PRORATE C |
|---|---|---|---|---|---|---|---|---|---|
| 80.00 | 98.88 | | 98.88 | | | | | | |

| TYPE | BASE | AWARD AMT | FLSA OT | LUMP SUM AL |
|---|---|---|---|---|
| T&A | 98.88 | | | 506.76 |
| ADJ | 23346.88 | 500.00 | 129.70 | 505.75 |
| YTD | | | | |

| TYPE | FED TAX | TSP LOAN | TSP LOAN | BASIC LIFE | MEDICARE | OASDI | RET FERS EMP |
|---|---|---|---|---|---|---|---|
| | | 03 | I | 04 | A | | K |
| T&A | 126.69 | | | 31.58 | 4.20 | 8.23 | 35.19 | .79 |
| ADJ | 2385.18 | 420.56 | | 789.50 | 104.40 | 341.31 | 1459.39 | 186.77 |
| YTD | | | | | | | 1467.36 |

| NO/ID/ISSUE | STATE TAX | LOCAL TAX | HBI EMP | TSP EMP | |
|---|---|---|---|---|---|
| | PA M | 001 M | 111 A | | |
| T&A | 22.14 | 25.33 | 37.99 | 840.00 | |
| ADJ | 724.23 | 1055.92 | 943.75 | 4786.47 | |

BENEFITS PAID BY GOVERNMENT FOR YOU

| TYPE | BASIC LIFE | HBI | RET FERS | MED/OASDI | GOVT TSP | GOVT CUM TSP | OTHER GOVT |
|---|---|---|---|---|---|---|---|
| T&A | 2.10 | 113.99 | 11.07 | 43.42 | .99 | 313.50 | |
| ADJ | | | | | | | |
| YTD | 52.20 | 2831.75 | 2513.44 | 1800.70 | 767.89 | 5227.93 | |

| | |
|---|---|
| HOURLY RATE | 12.36 |
| ANNUAL SALARY | 25789.00 |
| ANNUAL ANNUITY AMOUNT | |

EARNINGS/GROSS
MED GROSS 567.65
OASDI GROSS 567.65

DEDUCTIONS/NET

| LAST WIG DATE | 06-27-2004 |
|---|---|
| CY PP LEFT | 02 |
| MAILED TO | EFT |

GROSS PAY 605.64
NET PAY 313.50

| PPE DATE | 11-27-2004 |
| PAY DATE | 12-08-2004 |
| OFFSET BASE | N |
| TIA SEQ NO | 0006763552 |
| FLSA | N |

112 WEST CHAMPLOST AVE.
PHILADELPHIA   PA 19120

W-2/TSP ADDRESS
NET PAY ADDRESS

NO CHANGE TO NET PAY ADDRESS
INFORMATION FROM LAST PAY PERIOD

BOND ADDRESS

*I received five $100.00 cash awards for my contribution to the efficiency of the service between fall of 2001 and the spring of 2004. These awards were given to me by my first line supervisor's who had first hand knowledge of my good character and conduct.*

# SNELLING PERSONNEL SERVICES

1617 JFK Blvd. Suite 1040  Philadelphia, PA 19103  (215)568-1414  Fax(215)568-1655

May 10, 2005

OA000013M7/EM00000506

Ken-Crest Services
Jeane Baker
901 E. Ontario St.
Philadelphia, PA  19134

An integral part of our Program for Employee Relations and Customer Service (PERCS) is the Assignment Merit Evaluation. This evaluation is used to monitor the performance of our employee on assignment for you. In addition, this evaluation is used to consider employees for pay increases, promotions, training, and targeting areas for improvement. Please take a moment to fill out this evaluation. Your candor and honesty will provide us with the continuing guidance that we need to increase the level and quality of service that our company offers. Many thanks for your time and help.

## Assignment Merit Evaluation

*Please rate the employee in each of the categories below. Circle your response.*

Employee Name  **Darryl Murray**
Job Title  **Industrial Worker (Light MFG)**

Start Date  **5/3/2005**
Last Evaluation

| Category | | | | |
|---|---|---|---|---|
| **Quality of work** | 100  95  (90)  virtually no errors | 85  80  minimal errors | 75  70  passable | 65  60  careless |
| **Dependability** | (100)  95  90  needs no supervision | 85  80  minimal supervision | 75  70  needs average supervision | 65  60  needs constant supervision |
| **Attendance** | (100)  95  90  never absent or tardy | 85  80  seldom absent or tardy | 75  70  marginal attendance | 65  60  unacceptable attendance |
| **Cooperation/Teamwork** | (100)  95  90  highly cooperative excellent teamwork | 85  80  good participation with others | 75  70  satisfactory participation | 65  60  fails to recognize cooperative role |
| **Quantity/Productivity** | (100)  95  90  always exceeds production requirements | 85  80  meets or exceeds production requirements | 75  70  meets only minimal production requirements | 65  60  below requirements |
| **Initiative** | (100)  95  90  actively seeks new responsibilities and tasks | 85  80  generally assumes new responsibilities and tasks | 75  70  resistant to new responsibilities and tasks | 65  60  refuses new responsibilities and tasks |
| **Personality** | (100)  95  90  exceptional well-liked | 85  80  seldom has disputes with others | 75  70  frequent misunderstandings with fellow workers | 65  60  disliked by fellow workers |

**Does this employee's qualifications match your job requirements?**    (Yes)    No

**Please feel free to comment on any employee strengths and/or weaknesses**

*It has been a pleasure to have Darryl work at our location. He completed the work throughly & quite independantly. He is well liked by staff*

**Appraiser name and date**

*Jeane Baker, Prog. Dir.    5/10/05*

Memo:
Date:           Feb 02, 2006
Subject:        Closing Statement

My credibility should be determined by documented evidence of my past and not the opinion of a man fearing reprisal from me for investigating an instance of misconduct on my part.

My work history, relationship with my coworkers and immediate supervisors, my reaction to past disciplinary actions, lack of a criminal record, school records, and affidavits collected by EEOC testify of my good character and credibility.

NARA officials testified that prior to this incident I was always polite and cordial.

Prior to hostile coworker Mitchell Buffone's charge that I offended him and created a hostile work environment, there has never been a documented complaint against me from anyone working at NARA.

There is eyewitness testimony from a 17 year veteran employee that security guard James Hughes allegations are false. Mr. Hughes misrepresented our conversation to NARA for

My removal from Federal service was the result of abuse of power and a hostile group of NARA officials

I believe reprisal against Muslims for 9/11 was a factor in alleging my written materials to be offensive. It was just an excuse to conceal a more sinister plan to terminate my employment.

NARA officials testified to EEOC that I was somehow connected to or supported Osama bin Laden and Al Quaeda.

The insubordination charge which formed the basis for my removal from Federal service was baseless, petty, pathetic, and childish abuse of power

Calling my friends a "snitch committee" and declaring my vote for Kerry on Nov 11, 2004 was called offensive and insubordination.

When I was placed on administrative leave on Sept. 16, 2004, I believed that management would be reprimanded by their supervisors for religious harassment.

Memo
Date       Feb. 2006
Subject: Threatening Remark Allegation Unrealistic

Being a 17 year employee of NARA has afforded me
a great deal of personal information about my coworkers
and management

I know what time every employee arrives and
departs from work everyday.

I know the security guard works from 6:00 am
to 4:00 pm Monday – Thursday

I know the make, model, year, and color of
every employee's car.

I know that management is alone in the office
area from 4:30 – 5:00 pm on most days with no
guard at the first front door of the building.

I know the access code to the lock on the
inner door. I know what time the loading dock
doors are open for shipping and receiving.

I know how to get manager's cell phone numbers
and home addresses if I want them.

If I wanted to hurt somebody at NARA I Know how, when, where, and what time to do it

If I wanted to scare management with a bomb threat I would do it over the phone anonymously.

I would never bring a gun, bomb, or any Kind of weapon on to government property Knowing the penalty carries a mandatory sentence of 20 years to life in prison.

Security guard James Hughes definitely has an active imagination that could have given this incident a tragic ending if I were a violent person.

The only victims harmed by this incident have been me and my family.

Some type of justice is going to be served before I can ever let this crime go.

I want James Hughes investigated and charged with misconduct for his role in this incident.

I want John McEvoy investigated for misconduct involving harassment, abuse of power and unlawful termination.

Memo
Date          Jan. 2006
Subject:      Civil Rights Act 1991
              Unlawful Harassment & Discrimination
              Religion Motivating Factor

NARA's management instituted an unlawful order restricting my freedom of religious expression and freedom of speech on subjects dealing with race, religion, and political issues.

NARA's insubordination charge for alleged violation of this order formed the basis for the termination of my 17 year career.

NARA's charge of making a threatening remark to a security guard is refuted by the testimony of eyewitness Ms Irene Jones, employee. The absence of a motive also makes Mr Hughes allegations of a threatening remark incredible. A Federal Protective Service investigation yielded insufficient evidence to impose criminal penalties.

The actions and attitude of NARA's officials in this matter are indicative of the harassment I have experienced for most of my years as a NARA employee

Summary:

History of Employment at NARA

1. Started work at NARA 1987. Position Title Archives Aid GS-3 level

2. Applied for promotion to GS-4 several times; promotion always denied - same reason; another more qualified candidate selected; completely untrue

3. Harassed and tormented for years by the status quo clique + Director Dave S. Weber

4. Warning Letter 1995; Charged with displaying materials with Anti-Catholic theme

5. 1996 Charged with Insubordination; Proposal to suspend cancelled.

6. Peace Treaty signed with Dave S. Weber

7. 1997 Dave S. Weber launches draconian attacks; proposes new 14 day suspension

8. False charges fueled by misinformation

The incident is a setup from the beginning.
I am seduced by his fork tongue into working
on a special assignment with no quota and no
time limit. Weber accuses me of lying about the
time I spent working on the assignment.

9. David S. Weber eventually demoted
   misconduct related to racism and discrimination

10. 1997 New Director James Mount
    Deciding official sides with Dave Weber
    out of ignorance of the case, enforces
    14-day suspension.

11. 2000 New Director Dave Roland in office.
    Peaceful relations established for about
    two years. After his promotion to Asst.
    Regional Administrator he becomes less
    concerned about oppressed and exploited
    GS-3 & GS4 level employees

12. July 2001 Roland's friend John McEvoy
    given a supervisor position, he quickly
    appoints himself boss of other supervisor

13. 2003 John McEvoy promoted to new
    Director. He is new Dragon in office

14. 2003 John McEvoy proposes 3day suspension for carelessness/neglect of duty; miscount of completed work, a repeat of the 1997 charge; fabricated evidence supplied by two hostile coworkers with an axe to grind. Management would never accept this defense from me; refuses to meet with me to discuss my concerns.

15. John McEvoy, supervisor at this time seizes authority over my supervisor and proposes a 3day suspension for me. my enemies at NARA have found an ally in John McEvoy to do their dirty work.

16. Director Dave Roland signs his signature as the proposing officials for the suspension masterminded by John McEvoy

17. V. Chapman Smith, Regional Administrator signs her signature as deciding official without ever meeting with me. John McEvoy handles this incident from beginning to end. Strange indeed.

18. Aug 16, 2003 John McEvoy issues a Warning Letter charging me with displaying offensive materials on my desk.

This is a repeat of the 1995 letter issued by David S Weber. Mitchell Buffone and John McEvoy have been studying my personnel file. Draconians are experts at creating a paper trail.

19. Sept 16, 2003   John McEvoy places me on administrative leave pending the outcome of an investigation into unknown charges of misconduct. This is a violation of NARA' official policy; employees must be interviewed and informed of specific charges.

20. Sept 22, 2003   Security guard, friend/associate of 3 1/2 yrs accuses me of threatening to blow up NARA after notifying me that management request that I leave the premises. James Hughes makes this allegations after meeting with John McEvoy several hours after the incident. Careful scrutinization reveals his story to be incredible. His own eyewitness calls him a liar. John McEvoy threatens his eyewitness with termination. Asst Director Dan Beckesom who requested by departure has no knowledge of any threatening remarks. The mystery continues

21. Oct 4, 2004 I file EEOC report 5/5

22. Oct 21, 2004 Union Rep responds to NARA's proposal to terminate in writing

23. Nov 19th, 2004 Dave Rolonel Asst Regional Administrator terminates my employment

24. Aug 4, 2005 Allen Weinstein, Archivist of United States accepts NARA's decision to terminate in his final agency decision.

25. Aug 31, 2005 I file civil action in Eastern District Court, CV05-4557

Memo:
Date:     Jan 06, 2006
Subject : Hostility, Harassment, and Conspiracy
          Charges of Misconduct Against NARA

1987    Hired as intermittent employee at NARA
        GS-3 level Archives Aid

1989    Temp. Appointment Pending Establishment of
        Register (TAPER) GS-3 level employee

1995    Warning letter for leaving Islamic
        article in Veteran Administration smoke room;
        Catholic employee in V.A, called article
        offensive.

1996    Hired as Permanent Employee GS-3
        NARA forced to hire all TAPER employees
        with 3yrs of continuous service.

        Hostile director David S. Weber steps
        up his efforts to terminate me. He is
        a racist with passionate hate for
        educated blackmen.

        David Weber proposes 14 day suspension
        for some nonsense I can't even remember
        He is talked into dropping his proposal

1997    Promotion to GS-4 level denied
I am the most qualified candidate
with education, experience, length of service

Misinformation enrages David Weber; he
believes I violated his trust in me. He sets
me up for a 14 day suspension for falsifying
my daily work log. This was classic set up

1998    Promotion to GS-4 level denied again.
Deciding official is a mystery person.
NARA declares she can promote
whomever she wants even a less qualified
candidate. Many promotions given to white
males outside the agency.

2001    Counseling letter for Arabic writing
on a personal junk box called offensive.
Coworker mistakingly used box to mail
work to SSA. Anything dealing with
Islam, muslims, or Arabic inscriptions
called offensive after 9/11

2003    New hostile director John McEvoy
        non-social strict disciplinarian
        equates efficiency with discipline

        Conspires with taskmaster and
        overseer coworker Mitchell Buffone
        seeking reprisal for our volatile
        relationship

2004    McEvoy writes Warning Letter to me
        for writing disparaging remarks
        allegedly against Mr. Buffone. Buffone
        ignores the chain of command in filing
        his complaint against me

        Aug 17, 2004  Warning Letter

        Threatens dismissal for writing racial
        religious, politically offensive statements,
        or disparaging remarks about coworkers

2003    Aug 2003   3-day Suspension

        John McEvoy Conspires with Mitchell
        Buffone and coworker Vernell Tate
        to plant fabricated evidence enabling
        McEvoy to propose decide 3-day
        suspension.

16 Sept 2004  John McEvoy places me on Administrative Leave, no specific charges filed against me; he says he investigating misconduct

Sept 22, 2004  I visit NARA to see concerned coworkers worried about my job; Asst director Don Beckman ask me to leave premises (parking lot) via message to Security guard James Hughes

I immediately comply with the Asst director request confiding in James, "Somebody needs to blow the mother——— up." James and I have known each other for 2½ yrs. We occasionally talk shit about a lot of things

James knows I am talking shit with him by the look on his face and his alleged comment "Watch what you say." Now, why would he say this if I threatened him on the facility. James invents these threats hours after talking to John McEvoy

Sept 24, 2004    John McEvoy Proposal To
Remove From Federal Service

2 Charges now Filed =

Charge 1: The nonspecific charge from
Sept 16, 2004 is up graded
to insubordination in the
first degree. A baseless pathetic
hate inspired charge and crime
in my opinion

Charge 2: Making a Threatening Remark

Security guard James Hughes my
impostor friend is now collaborating
with John McEvoys efforts to
fire me.

James declares Darryl said "I'm here
to blow up the place"

James declares Darryl said, "When I
come back I'm blowing up the place"

These are outrageous incredible
vicious lies. Eyewitness and co-workr
Irene Jones condemns these lies

Nov 9, 2004

Asst Regional Administrator David Roland, the deciding official letter notifies me of his decision to remove me from Federal Service.

Given the false information and charges against me at the time his decision seems fair and just.

I believe his decision would have been different if he was not afraid to sit down with me and allow me to make an oral response to the charges in accordance with agency policy. National Agreement between the employees and the agency allows for an oral response when facing termination.

Aug 04, 2005 Allen Weinstein Archivist of the US proves my failure to make a case for discrimination involving race.

Aug 31, 2005 I file civil action in District Court for unlawful termination involving religious harassment, slander and defamation of character.

Exhibits
Filed in
Hard Copy