

*Federal Records Center—Philadelphia*

5000 *Wissahickon Avenue*     *Philadelphia, Pennsylvania* 19144

Date      :  March 23, 1995

Reply to
Attn of   :  Director - David S. Weber

Subject :  Letter of Instruction to Cease Posting and Distributing
           Information

To        :
           Darryl Murray

           During the past several weeks you have displayed in our break
           room posters, signs, flyers, newspaper clippings and other
           forms of information relating to the beliefs of the Nation of
           Islam. These have contained statements regarding racial,
           political, and religious matters.  We have discussed this
           issue a number of times and I have requested that you desist
           from displaying such information. You have continued to do so
           and I have continued to receive complaints from other Federal
           employees and members of the public who have had reason to
           pass our break room.

           It is inappropriate to display information of any sort
           regarding religious or political beliefs anywhere in our
           workplace. Our space cannot be used as a public bulletin
           board, and no documents should be posted without prior
           management approval. Please remove all the material you have
           posted, anywhere in the Federal Record Center by close of
           business March 24. You are further directed to immediately
           stop from distributing or posting <u>any</u> materials in the
           workplace.  Your failure to comply will be the basis for
           charging you with insubordination and taking disciplinary
           action, which could include your removal from Federal service.

           Please see me if you do not understand this letter, what is
           expected of you, or the possible consequences of failing to
           follow these instructions.

           *Gloria A. Grouzos*
           GLORIA A. GROUZOS
           Chief, Service Branch

EXHIBIT

Murray - 1
11-20-06

MAR 1 3 1996

Mr. Darryl Murray
Federal Records Center
14700 Townsend Road
Philadelphia, PA   19144

Dear Mr. Murray:

This is notice that, to promote the efficiency of the Service, I propose to suspend you for a period of 14 calendar days from your position of Archives Aid, GS-1421-2, no later than 15 calendar days from your receipt of this letter for insubordination and unauthorized absence. The reasons supporting this proposal are as follows:

## INSTANCE OF MISCONDUCT: Insubordination

On January 31, 1996, David S. Weber, Director, Federal Records Center, received a telephone call from Gerald Schweiker, Director of Personnel for the Veterans Administration Regional Office (VARO) at 5000 Wissahickon Avenue. Mr. Schweiker reported that he had in his possession photocopied and highlighted pages of The Final Call, a Nation of Islam publication, which had been left in the VARO breakroom. These appeared similar to material which you had left at various places in the Wissachickon Avenue Federal Building on previous occasions.

I issued you a counseling letter on March 23, 1995, in which you were told that it is inappropriate to display information of any sort regarding religious or political beliefs anywhere in the workplace. You were further directed to "immediately stop from distributing ... any materials in the workplace." You were further warned that your failure to comply would be the basis for charging you with insubordination and that you would be subject to disciplinary action. Mr. Weber also orally counseled you concerning these matters, most recently in September 1995.

When Mr. Weber questioned you about the incident he learned about on January 31, you admitted that the material was left by you. However, you said that you left the material for a fellow Nation of Islam member from the VARO and that you were not proselytizing. I do not find this assertion to be credible. By leaving this material in the breakroom, you made it available to VARO employees who use the breakroom -- some of whom had previously

EXHIBIT

Murray - 2
11-26-06

complained about and were offended by this material. The March 23, 1995, counseling letter clearly directed you to cease distributing material concerning racial, political and religious matters. You failed to follow this directive. Therefore, you are charged with insubordination for failure to comply with the counseling letter of March 23, 1995.

## INSTANCE OF MISCONDUCT: Unauthorized Absence

You were required to report for work for a one-week period at our Townsend facility beginning February 6, 1996, and ending February 13, 1996. You failed to do so, nor did you contact your supervisor to explain your absence. **You were charged with unauthorized absence on February 6, 7, 8, 9, 12 and 13, 1996.**

When you failed to report to work as described above, I wrote to you on February 16, 1996, giving you a written directive to report for duty beginning on February 22, 1996, and ending on March 6, 1996. You did not report to work on February 22, 1996, or February 27, 1996. **You are charged with unauthorized absence on February 22, 1996, and February 27, 1996.**

Moreover, this is not your first instance of misconduct. You were suspended for 7 days on August 30, 1993, for climbing/standing on shelving units. Further, you were issued a reprimand on August 30, 1993, for climbing/standing on shelving units.

A continuation of such misconduct will not be tolerated because it adversely affects the efficiency of the Federal service.

Within 10 calendar days of your receipt of this notice, you may reply in writing, in person or both to Daniel W. Bennett, Assistant Director, Federal Records Center -- Philadelphia (telephone 215-671-1242) setting forth any pertinent facts, extenuating circumstances, or other information you desire to submit. You may also submit affidavits in support of your reply and may be represented by an attorney or other representative. You will be allowed a reasonable amount of official time, if otherwise in a duty status, to prepare your reply, to secure affidavits or other documents. The documents on file supporting this proposal are attached. You should contact me to arrange for the use of official time.

If you do not understand your rights concerning this proposed suspension, you may contact Carol Wehrkamp, Human Resources Services Division, on 301-713-6760.

Your reply will be given full consideration before a final decision is issued. If you

are suspended, a written decision notifying you will be issued before the suspension takes effect.

Sincerely,

GLORIA A. GROUZOS
Chief, Service Branch

Attachments

cc: Official:  ADM-HRSL
     Reading: ADM-HRSL
  Info copies:  ADM-HRSL(SL), ADM-SEC, 3NC,
     JJANSHEGO, jmj,3/1/96
  DOC:j:\murray.ps        file code: 329



NOTICE
"THEM"

1. Complexion
2. Broad Nose
3. Kinky Whuly Hair
4. Brown Eyes
   TINTED GLASSES TO
   PROTECT EYES FROM
   BRIGHT DAYLIGHT

5. Poor Posture
6. Cranial Size (cm.)
7. I.Q
8. Criminal Record
   BIG THUMBS FOR
   TURNING PAGES
9. Anti Social Behavior

SMALL BEADY EYES
FROM WORKING LONG
HOURS IN POORLY
LIT AREAS

10. Sex Addicts
11. Wife Beater
12. Slaves
13. Captives
14. P.O.W's
15. Prisoners   LONG ARM
16. Hostages    REACHING
17. Subjugates  TOP SH
                STAC

Basketball
Players

18. Oppressed
19. Exploited
20. Outcast

HOLLINGER
STORING DUS
DOCUMENTS
RARELY SEE
LIGHT OF D

Satan

Serpent  Lucifer
The              Seed
Devil      A Man
        The
        Priest  Sac

Tap Dancers

EXHIBIT
MURRAY - 3
11-20-06

## MEMORANDUM OF AGREEMENT

On March 13, 1996, Mr. Darryl Murray was issued a notice of proposed 14-day suspension from the position of Archives Aid, GS-1421-2, for insubordination and unauthorized absence.

Mr. David S. Weber, Director, Philadelphia Federal Records Center, has considered Mr. Murray's oral and written responses, given on March 29, 1996. Mr. Weber, the Deciding Official, has determined that the 14-day suspension is for the efficiency of the service and should be effected. However, this suspension will be held in abeyance for one year from the date of this agreement, subject to the following:

     (1) Execution of this Memorandum of Agreement, and
     (2) Compliance with each of the provisions outlined herein.

A. By signing below, Darryl Murray and the National Archives and Records Administration (NARA), freely and voluntarily enter into this Agreement.

B. Darryl Murray agrees to follow all of the work rules and procedures that his supervisors establish.

C. Darryl Murray agrees that he will not post or distribute any materials in the workplace, including any work spaces which may belong to or are shared with other organizations. Darryl Murray understands that this means he may not distribute any materials in the workplace even during lunch periods, breaks, or before or after working hours.

D. Darryl Murray agrees to follow proper procedures to request approval of his absences from his supervisors. Darryl Murray understands that failure to follow proper procedures to request leave may result in being charged as absent without leave (AWOL), which is an unauthorized absence. Unauthorized absence may serve as the basis for disciplinary action, up to and including removal. Darryl Murray understands that requests for leave are to be made in advance of the absence, normally at least one day prior to the absence, except in the case of an emergency or illness. In the case of emergency or illness, leave should be requested within two hours after his scheduled arrival time.

E. NARA agrees that if Darryl Murray complies with the provisions of this agreement for one year from the date of this agreement, NARA will cancel its decision to effect a 14-day suspension after the one year is completed.

F. Darryl Murray understands that if he does not follow the terms of this agreement, NARA will effect the 14-day suspension.

G. Darryl Murray understands that if there is future misconduct on his part, NARA



will effect the suspension, and NARA will initiate disciplinary action up to and
including removal.


_David S. Weber_ (Date)
Director, FRC, Philadelphia
NARA

_Darryl Murray_ (Date)

EXHIBIT
Murray - 5
11-20-00

From: Darryl Murray — Employee

Date: Nov. 20, 2000

Subject: Imminent Violence In The Workplace

Background Info:

Recent intelligence reports have revealed that the F2C clique, — Mitchell Buffone, Keather Dawson, Hercules Robinson, and Pat Davis have declared war on myself and my intelligence agents. Today, I spoke to senior members of the clique and encountered extremely hostile reactions. The clique feels that I represent a clear and present threat to their authority and power. They will leave no stone unturned in having me removed from Federal service.

The clique is currently trying ms to provoke me into committing an act of violence against one of its members. They know the violence I am capable of, and hope that they can use it against me. I strongly recommend that the clique be counseled before I decide to take retaliatory measures. This situation requires your immediate attention.



October 26, 2001

From:  John McGee

To:    Darryl Murray

Subj:  In-house Counseling Letter


It was reported to me by Mr. David Roland, Records Center Operations Director, that he found a box of SSA files in the mailroom, staged for shipping with what he believed were offensive, objectionable and unprofessional writings or graffiti. The graffiti was written in red magic marker.

In addition, he was contacted by one of our customers, the Social Security Administration, in Wilkes Barre, Pa. They informed him that included in one of our daily shipments to them were two boxes that contained similar writings. The writings, also conducted in red magic marker (pictures enclosed), appeared to have arabic, islamic or middle eastern slogans. The SSA felt, in light of resent events in our country, this incident needed to be reported to the authorities. In this case, the Federal Protective Service (FPS).

The FPS, in turn, contacted Mr. Roland and lodged a formal complaint. Pictures of the boxes were sent electronically to Mr. Roland by an investigator from the FPS.   After reviewing the pictures and reflecting on past history, we concluded that you may have cobnducted these writings. I informed you verbally of the situation and showed you the pictures of the two boxes that were in the shipment. You concurred that you were the culprit but thought them as harmless writings and that the graffiti was never intended to leave the building and could not understand the problem.

However, in addition to unprofessional conduct, the incident was offensive to NARA and agency personnel and also created a disturbance. In addition, there was a clear neglect of duty and improper use of government supplies and materials. All of these offenses are in violation of penalties listed in Personnel 300, appendix 752A, Penalty Guide.

Consider this a formal in-house counseling letter that will be put in your folder.
Also be advised that any future incidents of this nature will be taken to the next level of disciplinary action.


John McGee
Supervisory Archives Specialist.

NOTE: Employee Read and Understood.  11/6/01 at Timeframent
       However Refused to Sign,

Memo:

To: Elizabeth Washington — Supervisor
    Office Of Regional Records Services
    Mid Atlantic Region
    Philadelphia, Northeast Facility

From: Darryl Murray — Employee

Date: April 25, 2003

Subject: Response To Todays Meeting

On March 23, 2003 management transferred me from the general records section to the Trust Fund (TFRCS) section. Since that time my monthly (PE) score has dropped from PE=94 Fully successful to PE=82 minimally successful.

Approximately two weeks ago I informed you of a medical condition I suffered from which I believed to be the cause of the drop in my (PE) score. David Roland, Regional Director, to the best of my knowledge, wanted me to summit up to date documentation indicating my current medical status. I compiled and submitted documentation on April 24, 2003.

You further informed me during our meeting that 8 FFCX request scanned to me two weeks ago were just recently discovered unaccounted for. I have no explanation for how this could go unnoticed for

EXHIBIT

MURRAY - 7
1-20-06    KH

two weeks by staff trained to track the TERC files whereabouts at all time.

Later in the day, I was notified that 2 of the missing 8 FFLX request were accounted for and the remaining 6 were being investigated. Earlier in the week TERC staff informed me that they were looking for 2 files that were scanned to me, I subsequently discovered that the 2 files were serviced by another employee, This employee had somehow received FFLX request that were scanned in the computer to my name.

These types of mistake can easily cost an employee his job. There are some glitches in the system that need to be fixed before employees are accused of losing files they never had any contact with...

It is unclear at this time if your decision to recommend that I be placed in the P.I.P. program, which targets employees for termination, is for low (P.E) scores or allegedly misrouting files or both. If it is determined that I am also not responsible for the remaining 6 missing file I expect a ~~complete~~ explanation the ~~outcome of your investigation.~~ I hope to be exonerated as soon as possible

New paragraph Hopefully next week Mr. Roland will determine the best course of action

regarding my low (PE) scores and documented medical condition. Before I subject myself to the PIP program after 16 years of employment at NARA, I will enter a 2nd request to return to the general records section where I was quaterly rated fully successful.

I hope something can be worked out enabling me to remain in the Trust Fund Section without the stress of meeting the current quotas. As a last resort I will seek a solution through our agency's alternative dispute resolution program.

Thank you for your assistance in this matte

Information I Need For My Investigation

1. Who scanned the request to me?

2. Date request were scanned to me?

3. Date I serviced request?

4. Number of request serviced on Task Sheet

5. Were there any left over request given to another employee scanned under my name?

6. When should this problem have been discovered?

7. Who should have discovered this problem sooner.

8. Should the person who scans the files after I pull them have spotted this problem

MEMO

To:        David Roland, Assistant Regional Administrator

From:      Darryl Murray

Date:      May 12, 2003

Subject:   Response From Personnel Concerning Reasonable Accommodation Request


I am due for an annual appraisal in July, 2003.  I urgently need information from Personnel and your office regarding my reassignment to the General Records sections.

My current annual PE is 88, minimally successful.  I need to be reassigned, as soon as possible, to receive a wage grade increase.

It has been two years since I was eligible for a WGI.  I need to be reassigned today, if it is possible.


Darryl Murray

5/12/03

Darryl:

My Decision is attached. Please feel free to discuss with me some time tommorow (5/13).

Sincerely,

Dan Roland

**EXHIBIT**

MURRAY-8
11-20-06  KH

# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION
## PERFORMANCE MANAGEMENT SYSTEM — PERFORMANCE APPRAISAL
(General Schedule and Prevailing Rate employees)

| NAME | SSAN |
|---|---|
| DARRYL MURRAY | 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 |
| **TITLE, SERIES AND GRADE** | **OFFICE** |
| ARCHIVES AID        GS-1421  03/04 | NRBPT |

**TYPE OF RATING:**

Interim rating because of:

- [X] Annual
- [ ] Interim
- [ ] Reassignment
- [ ] Detail
- [ ] Change in plan
- [ ] Change in rater
- [ ] Other _____

| ANNUAL RATING PERIOD | INTERIM RATING PERIOD *(if applicable)* |
|---|---|
| 7/05/00   to   6/30/01 | to |

**SUMMARY PERFORMANCE RATING**

- [ ] Outstanding
- [ ] Highly Successful
- [X] Fully Successful
- [ ] Minimally Satisfactory
- [ ] Unacceptable

**PERFORMANCE AWARD RECOMMENDATION:**

Amount $ _____

**WGI DETERMINATION:**

WGI will be granted [X]
WGI will be denied [ ]

**QSI RECOMMENDATION:** [ ] Yes    [ ] No

**RATING OFFICIAL COMMENTS** *(Optional):*

Signature _____  Date 6/28/01

**REVIEWING OFFICIAL APPROVAL AND COMMENTS:**

Signature _____  Date 6/28/01

**AWARD FUND MANAGER APPROVAL:**

Signature _____  Date _____

**DISCUSSED WITH EMPLOYEE:**

X Employee's Signature _____  Date 6/28/01

Page 1 of ____2____

NA FORM 3021 (11-86)

Case 2:05-cv-04557-NS   Document 29-1   Filed 01/05/07   Page 17 of 50

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION
TASK SYSTEM
PHILADELPHIA FEDERAL ARCHIVES AND RECORDS CENTER
PSA
SERVICE SECTION Unit A

INQUIRY EMPLOYEE SUMMARY

MURRAY    DARRYL    GS-03/04    C 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    LAST PROMOTION/WIG DATE 07/04/99

RATING-PERIOD DATE 00/07/05 THRU 01/06/23

| TASK | DESCRIPTION | STND | VOLUME | HOURS WORKED | HOURS OVERTIME | HOURS EARNED | PE |
|------|-------------|------|--------|--------------|----------------|--------------|----|
| ANLV | LEAVE | .00000 | | 276.75 | .00 | .00 | 0 |
| BKHM | MAKE BOXES | .01666 | 60 | 1.00 | .00 | .99 | 0 |
| COPA | CONTINUATION OF PAY | .00000 | 0 | 37.00 | .00 | .00 | 100 |
| CRED | CREDIT HOURS USED | .00000 | 0 | 50.00 | .00 | .00 | 0 |
| ESCT | Escorting Agency Personnel | .00000 | 0 | 5.00 | .00 | .00 | 0 |
| FFFX | TRUST FUND REFILING | .05000 | 100 | 6.00 | .00 | 5.00 | 83 |
| FFLX | LOCATING FILES (TERCS) | .09090 | 45 | 4.00 | .50 | 4.09 | 91 |
| FFLX | LOCATING FILES (TERCS) | .06666 | 22 | 2.00 | .00 | 1.46 | 73 |
| GFOF | GENERAL REFILES | .05000 | 64 | 5.00 | .00 | 3.20 | 64 |
| GPPB | PROBLEM REFILES-GENERAL | .10000 | 1260 | 120.50 | .00 | 126.00 | 109 |
| GHUD | HUD REQUESTS | .09090 | 6 | .50 | 5.50 | .54 | 108 |
| GRFF | CUSTOMS/FCC REQ | .10000 | 525 | 44.00 | .00 | 52.50 | 108 |
| GRIE | ADR GRIEVANCE/PROCEEDINGS | .07407 | 10 | 1.00 | 2.50 | .74 | 0 |
| GROT | MIXED REQUESTS | .06467 | 984 | 66.25 | 1.50 | 72.88 | 108 |
| GROT | GR MIXED REQUEST | .02505 | 336 | 29.25 | .00 | 22.39 | 77 |
| GRSC | SSA INACTIVE COURT CASES | .03703 | 20 | 2.00 | .00 | .00 | 25 |
| GRSL | SSI INACTIVE REQUEST | .02500 | 23561 | 776.25 | 94.25 | 828.02 | 95 |
| GRS1 | SSI REQUEST-LONER | .09090 | 1760 | 54.25 | 6.25 | 44.00 | 73 |
| GRTC | T-CHECK REQUESTS | .09259 | 1017 | 100.75 | 2.00 | 92.44 | 90 |
| GRTE | TELEPHONE/SPECIAL REQUEST | .10000 | 518 | 47.00 | 4.25 | 47.96 | 94 |
| GRTE | TELEPHONE/SPECIAL REQUEST | .03846 | 444 | 44.50 | .00 | 44.60 | 100 |
| INFA | INTERFILES | .00000 | 19 | 1.00 | .00 | .73 | 73 |
| LEAV | LEAVE | .00000 | | 4.00 | .00 | .00 | 0 |
| MEET | MEETING | .00000 | | 14.75 | .00 | .00 | 0 |
| ORIE | ORIENTATION | .00000 | | 1.50 | .00 | .00 | 0 |
| PIMF | CSED PHILADELPHIA IMF | .01000 | 500 | 4.00 | 1.00 | 5.00 | 100 |
| PRO2 | MARKING SHELVES TREAS., CHECKS | .01660 | 192 | 3.00 | .00 | 3.18 | 106 |
| QCGA | QUALITY AUDIT GENERAL RO's | .00000 | 7 | 1.00 | .00 | .00 | 0 |
| RELB | REBOX IRS | .08340 | 1033 | 100.50 | 1.25 | 86.15 | 85 |
| REPR | REPAIRING DAMAGED BOXES | .00000 | 486 | 7.00 | .75 | .00 | 0 |
| RHUD | REFILE HUD | .06660 | 52 | 4.00 | .00 | 3.46 | 87 |
| SHGN | SPACE MAINTENANCE -NON IRS | .00000 | 0 | 148.00 | .00 | .00 | 0 |
| SPIN | SPECIAL INTEREST WEEKS | .00000 | 0 | 3.50 | .00 | .00 | 0 |
| SSAC | SSI CLMS RQ | .07407 | 735 | 60.25 | 4.25 | 54.44 | 84 |
| SSWB | QC SSI PE | .05000 | 6 | .50 | .00 | .30 | 60 |

| | | VOLUME | HOURS WORKED | HOURS OVERTIME | HOURS EARNED |
|--|--|--------|--------------|----------------|--------------|
| TOTAL HOURS | | | 2028.00 | 124.00 | 1499.69 |
| STANDARD | | 32059 | 1601.75 | | |
| NON-STANDARD | | | 550.25 | | |
| GRAND-TOTAL | | 32562 | 2152.00 | | |

**** E N D   O F   R E P O R T ****

94



# Disposition of Reasonable Accommodation Request

| 1. REQUESTER'S NAME<br>Darryl Murray | 2. ORGANIZATION CODE<br>NRBPC | 3. NARA DECISION MAKER<br>David Roland |
|---|---|---|

| 4. DATE OF REQUEST<br><br>May 5, 2003 | 5. REQUEST<br><br>ρ  GRANTED (Complete #'s 6, 7, & 8)<br><br>ρ  DENIED (Complete #'s 6, 7, 9 &10) | 6) DATE REQUEST GRANTED<br>OR DENIED<br>May 12, 2003 |
|---|---|---|

**7) TYPE(S) OF REASONABLE ACCOMMODATION REQUESTED**

Return to former position in general records section.

**8. TYPE OF REASONABLE ACCOMMODATION GRANTED**

N/A

**9. REASON FOR DENIAL:** *(more than one box may be checked)*

θ  Accommodation ineffective
θ  Accommodation would cause undue hardship
θ  Medical documentation inadequate
X  Accommodation would require removal of an essential function
X  Accommodation would require lowering of performance or production standard
θ  Other (Please identify) _____

*# 10 on following page.*

*Want WGI eligibility?*

**10. DETAILED REASON(S) FOR THE DENIAL. (Must be specific (e.g., why accommodation is ineffective or causes undue hardship].)**

*Note: If the individual wishes to request reconsideration of this decision, file an EEO complaint or union grievance, he or she should refer to the procedures outlined in NARA 303, Processing Reasonable Accommodation Requests for Employees and Applicants with Disabilities.*

The physical requirements for Mr. Murray's former duties in the General Records Section and his current duties in Trust Fund unit are the same: lift up to 50 lbs considerable standing, walking, stooping, ending and lifting are required. Moreover, the performance standards are the same for both areas. Therefore if Mr. Murray is having difficulty performing duties in the Trust Fund Section, he would have equal difficulty doing so in his former assignment in the General Records Section.

Mr. Murray was assigned to the Trust Fund unit for a business related reason. The labor force in the Trust Fund unit was depleted. We had to backfill with contract labor and a new hire. Consequently, there was a drop in service levels. To provide ready and accurate access of records to the public, we saw a need to have better experienced employees in the unit.

An essential function of Mr. Murray's position is to retrieve and refile records and this requires lifting, walking, bending as described above. The agency has no other vacancy in the Philadelphia Records Center that would be more sedentary that we could offer Mr. Murray.

Inasmuch as Mr. Murray's physician says that he should be performing these duties only 4 hours a day, the agency could offer Mr. Murray a 4-hour work day (part-time position) - if he so makes the request.

**Send a copy of completed form to: Requester**
**-Return completed form to: NEEO, Diversity Program Manager-**

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION                NA 3044 (3-03)



# Confirmation of Reasonable Accommodation Request

| 1. REQUESTOR'S NAME<br>Darryl Murray | 2. ORGANIZATION CODE<br>NRBPC | 3. REQUESTOR'S TELEPHONE NO.<br>215-305-2000 |
|---|---|---|

| 4. TODAY'S DATE<br>5/12/03 | 5. DATE OF REQUEST<br>5/5/03 | 6. NARA OFFICIAL RECEIVING REQUEST<br>Washington/Roland |
|---|---|---|

| 7. NARA DECISION MAKER/ORG CODE<br>Roland NRBPC | 8. DECISION-MAKER'S TELEPHONE NO.<br>215-305-2003 |
|---|---|

**9. ACCOMMODATION REQUESTED** *(Be as specific as possible, e.g., adaptive equipment, request for an interpreter)* See NARA 303, Processing Reasonable Accommodation Requests for Employees and Applicants with Disabilities

*Return to former position in General Records section.*

**10. REASON FOR REQUEST**
Provided medical documentation that "excessive walking, climbing stairs, or ladders, and lifting boxes in excess of 40 pounds should be limited to no more than 4 hours per day" because of a disorder called Fibromyalgia, which is a permanent condition."

**11. IF ACCOMMODATION IS TIME-SENSITIVE, PLEASE EXPLAIN**

-Return completed form to: NEEO, Diversity Program Manager-

# *National Archives and Records Administration*

**MID ATLANTIC REGION**
14700 TOWNSEND ROAD
PHILADELPHIA, PENNSYLVANIA 19154-1096
*www.nara.gov/regional*

July 21, 2003

Mr. Darryl Murray
National Archives and Records Administration
NARA – Mid Atlantic Region (Northeast Philadelphia)
14700 Townsend Road
Philadelphia, PA  19154-1096

Dear Mr. Murray:

This is to notify you that your overall performance during the appraisal period from October 1, 2002 to June 28, 2003, was not at an acceptable level of competence. Therefore, your within-grade increase (WGI), which was otherwise due on June 29, 2003, will not be granted. In order to attain an acceptable level of competence, you must have an overall rating of at least Fully Successful. An overall rating of Fully Successful is attained when no more than one Critical Element is rated as Minimally Satisfactory and all others are at Fully Successful or higher. Your overall rating is Minimally Satisfactory. Enclosed is your performance appraisal. The following are the reasons why your within-grade increase is being denied.

**Critical Element –1**
Provides records services
a)      Searches records
b)      Refiles, interfiles, and photocopies records
c)      Accession, relocates and disposes of records
d)      Cleanliness in stack and office area
e)      All productivity and goal are met with an overall productivity rate 90% - 114%

**Fully Successful Performance Standard:**
Searches, Refiles, Interfiles, shelves records and removes records at 90% - 114% of existing quantitative standards with no more than .3% critical ad .5% major errors.

**Actual Performance:**
You attained a PE score of 87% for this rating period.

**Actions Necessary for Improvement:**
In order to improve, you should focus your efforts. Rather than following agency procedures, you sometimes make your own procedures which sometimes do not work out. You also sometimes work in a scattered manner, rather than working more methodically by stack area.

You have the right to request reconsideration of this determination. Your request must be in writing and be made within fifteen (15) calendar days. This request must state the reason(s) for requesting reconsideration of the determination and should be addressed to David Roland, Assistant Regional Administrator, NARA- Mid Atlantic Region (Northeast Philadelphia) 14700 Townsend Road,

**EXHIBIT**

MURRAY - 9
1-22-06

OFFICE OF REGIONAL RECORDS SERVICES

Philadelphia, PA 19154-1096. You may contact Mr. Roland at 215-305-2003, to arrange an appointment in the event you wish to make a personal presentation.

In accordance with the Labor-Management Agreement, you may designate a Union representative to assist you in this manner. If you are otherwise in a duty status, you will be granted a reasonable amount of official time to review the material that forms the basis for the negative determination and to prepare your response. In order to review the material in your case, or to arrange for use of official time to prepare or present your case for reconsideration, you should contact me.

Sincerely,

ELIZABETH M. WASHINGTON
Supervisory Archives Specialist

Enclosure – Performance Appraisal for period October 1, 2002 – June 28, 2003

Official - NHHR
Reading - NHHR
Info - NHHR (SL), NRBPC
CAWehrkamp:caw:/joanjanshego/07/15/2003
DOC:Murray WGI

Acknowledgement of Receipt _____ Date _____

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION
TASK SYSTEM
PHILADELPHIA FEDERAL ARCHIVES AND RECORDS CENTER
RECORD CENTER OPERATIONS STAFF
PRC

INQUIRY EMPLOYEE SUMMARY

RUN DATE 03/07/03          NT902000          PAGE NO   1

MURRAY    DARRYL          GS-03/05    C   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    LAST PROMOTION /WIG DATE 07/01/01

RATING-PERIOD DATE 02/10/01 THRU 03/06/28

| TASK | DESCRIPTION | STND | VOLUME | HOURS WORKED | HOURS OVERTIME | HOURS EARNED | PE |
|------|-------------|------|--------|--------------|----------------|--------------|----|
| ADLV | ADMINISTRATIVE LEAVE | .00000 | 0 | 8.00 | .00 | .00 | 0 |
| AIMF | ANDOVER CSED-1MF | .01111 | 1047 | .00 | 6.00 | 11.63 | 194 |
| ANLV | LEAVE | .00000 | 0 | 114.75 | .00 | .00 | 0 |
| CCLU | CHARGE CODE LOOK UP | .00000 | 2 | .10 | .00 | .00 | 0 |
| COMT | CREDIT HOURS USED | .00000 | 0 | .25 | .00 | .00 | 0 |
| CRED | CREDIT HOURS USED | .00000 | 0 | 1.75 | .00 | .00 | 0 |
| FFBX | TRUST FUND BATCHING | .00000 | 0 | 1.25 | .00 | .00 | 0 |
| FFFX | TRUST FUND REFILING | .05000 | 2504 | 147.95 | .00 | 125.20 | 85 |
| FFLE | INTERNAL TYPING ERRORS | .11111 | 71 | 6.00 | .00 | 7.88 | 131 |
| FFLP | LOCATING PROBLEM FILES (TERCS) | .11111 | 34 | 4.05 | .00 | 3.77 | 93 |
| FFLX | LOCATING FILES (TERCS) | .06666 | 2088 | 191.50 | .00 | 139.18 | 73 |
| GHUD | HUD REQUESTS | .09090 | 66 | 5.00 | .00 | 5.99 | 120 |
| GRS1 | SSI INACTIVE REQUEST | .03703 | 15719 | 644.80 | 21.00 | 582.07 | 87 |
| GRSL | SSI-REQUEST-LOWER | .02500 | 293 | 9.50 | .00 | 7.32 | 77 |
| GRTC | T-CHECK REQUESTS | .09090 | 602 | 57.50 | .00 | 54.72 | 95 |
| HOLV | HOLIDAY LEAVE | .00000 | 0 | 68.00 | .00 | .00 | 0 |
| MEET | MEETING | .00000 | 0 | 12.00 | .00 | .00 | 0 |
| ORIE | ORIENTATION | .00000 | 0 | 3.00 | .00 | .00 | 0 |
| PBMF | CSED PHILADELPHIA BMF | .00666 | 5086 | .00 | 47.00 | 33.87 | 72 |
| PIMF | CSED PHILADELPHIA IMF | .01000 | 1900 | .00 | 22.00 | 19.00 | 86 |
| P1MF | CSED PHILADELPHIA LADDER | .02000 | 2020 | .00 | 24.00 | 40.40 | 168 |
| PRO2 | MARKING SHELVES TREAS. CHECKS | .00000 | 0 | 44.85 | .00 | .00 | 0 |
| RELB | REBOX IRS | .08340 | 93 | 9.50 | .00 | 7.75 | 82 |
| RFSB | STANDARD BOX-REFILE | .06665 | 686 | 49.95 | .00 | 45.72 | 92 |
| RQSB | STANDARD BOX-REQUEST | .06666 | 442 | 30.60 | 1.00 | 29.46 | 93 |
| RQSF | REQUEST-STANDARD FILE | .06666 | 337 | 32.10 | .00 | 22.46 | 70 |
| SKLV | SICK LEAVE | .00000 | 0 | 84.50 | .00 | .00 | 0 |
| SMFN | SPACE MAINTENANCE -NON IRS | .00000 | 0 | 4.75 | .00 | .00 | 0 |
| SPIN | SPECIAL INTEREST WEEKS | .00000 | 0 | 2.25 | .00 | .00 | 0 |
| SSAC | SSI CLMS RQ | .07407 | 650 | 50.50 | .00 | 48.14 | 95 |
| WALK | TRUST FUND WALK IN REQUEST | .14285 | 67 | 9.60 | .00 | 9.57 | 100 |

| | TOTAL HOURS | | | 1592.00 | 121.00 | 1194.20 | 87 |

| | STANDARD | | 33705 | 1369.55 | | | |
| | NON-STANDARD | | | 343.45 | | | |
| | GRAND-TOTAL | | 33707 | 1713.00 | | | |

**** E N D   O F   R E P O R T  ****

# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION
## PERFORMANCE MANAGEMENT SYSTEM — PERFORMANCE APPRAISAL
(General Schedule and Prevailing Rate employees)

| NAME | SSAN |
|---|---|
| DARRYL MURRAY | 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 |
| TITLE, SERIES AND GRADE | OFFICE |
| ARCHIVES AID, GS-1421-03/05 | NRBPC |

**TYPE OF RATING:**

interim rating because of:

[X] Annual
[ ] Interim

[ ] Reassignment
[ ] Detail

[ ] Change in plan
[ ] Change in rater
[ ] Other _____

| ANNUAL RATING PERIOD | INTERIM RATING PERIOD *(if applicable)* |
|---|---|
| 10/1/2002   to 6/28/2003 | to |

**SUMMARY PERFORMANCE RATING**

[ ] Outstanding
[ ] Highly Successful
[ ] Fully Successful
[X] Minimally Satisfactory
[ ] Unacceptable

**PERFORMANCE AWARD RECOMMENDATION:**

Amount $ _____

**WGI DETERMINATION:**

WGI will be granted [ ]
WGI will be denied [X]

**QSI RECOMMENDATION:** [ ] Yes   [ ] No

**RATING OFFICIAL COMMENTS** *(Optional):*
During this period Mr. Murray is rated minimally successful. His PE for the reporting period is 87.

Signature *E. Zabicki M. Washington*          Date 7/14/03

**REVIEWING OFFICIAL APPROVAL AND COMMENTS:**

Signature                                       Date 7/21/03

**AWARD FUND MANAGER APPROVAL:**
Signature                                       Date 7/21/03

**DISCUSSED WITH EMPLOYEE:**
Employee's Signature                            Date

Page 1 of ___2___

NA FORM 3021 (11-86)

Darryl Murray – 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 – Performance Appraisal – 02/10/01 – 03/06/23

## CRITICAL ELEMENT 1
Provides Record Service: 1. Searches records
2. Refiles, interfiles and photocopies records
3. Accessions, relocations, and dispose of records

APPRAISAL
During this reporting period, Mr. Murray performed his duties minimually successful.
His PE for this rating period is 87.

ELEMENT RATING          ☐ O     ☐ HS     ☐ FS     ☒ MS     ☐ U

## CRITICAL ELEMENT 2
Assists with duties involving referencing, accessioning, relocating and disposing of
records. Duties consist of, but not limited to reviewing accessioning, relocation and
disposal documentation forms and providing assistance to lower graded employees.

APPRAISAL
Not performed during this reporting period.

ELEMENT RATING          ☐ O     ☐ HS     ☐ FS     ☐ MS     ☐ U

## CRITICAL ELEMENT 3
Task sheet reporting is timely and accurate.  All work complete or incomplete is brought
back to the appropriate unit.

APPRAISAL
Mr. Murray task sheet and work completion were satisfactory.

ELEMENT RATING          ☐ O     ☐ HS     ☒ FS     ☐ MS     ☐ U

Page 1 of 2

Memo:

To: Shawn Walker  EEOC
National Archives at College Park
8601 Adelphi Road
College Park MD 20740-6001

From: Darryl Murray

Date: Nov 17, 2004

Subject:   Security Guard James Hughes
Statement

I would like for EEOC to interview
Mr. James Hughes concerning our perceived
friendship.

Mr. James Hughes and I have know each
other for about 2 years, give or take a
couple of months. We usually chit chat
for about 15-20 minutes a day most
of the time.

I know I have made several veiled
comments or threats about wishing someone
do something drastic to force management
to change the injustices and 'equality
meeted out to the lower grade GS-3
employees and the clique who brown
noses management daily

Mr. James Hughes has never shown any
outwardly fear of me or my comments.
Neither has he ever warned me to
watch what I say.

SH

I dont believe Mr. Hughes quotes

000126

EXHIBIT

MURRAY-10
11-20-06  KH

Page 2 of 3
Nov 17, 2004

Darryl said, "I here to blow up the place" is accurate.

Darryl said, "When I come back, I'm bringing my people up here, you know what that means" is accurate

Darryl said, When I come back I'm blowing up the place

This is my version of what happened on Sept 22, 2004 at 11:10 a.m.

Around 11:00 I called NARA and spoke to Vanessa Adams receptionist. I asked her to page Skip and have him meet me in the parking lot at lunchtime 11:15 am. She confirmed my request.

I was at Grant Ave and Roosevelt Blvd. dropping off my friend for a doctors appt. I had her 3yr old son in the back seat.

Mr. Warren Hammond left a voicemail on my cell phone 3 or 4 days earlier. At 11:05 I decided to blow some time by responding to his message to call him and let him know how I was doing.

I told Mr. Hughes specifically, "I was leaving, I did not come here for trouble"

000127

3 of 3
Nov 17, 2004

Mr Hughes emerged from NARA facility
asked me "how I was doing." And
instantly re-entered the facility.

He re-emerged 3 or 4 min. later and
said, "Darryl you have to leave, they dont
want you on the premises".

I became upset, angry, confused, and
felt humiliated.

I told Mr. James Hughes, "I didn't
come here for trouble"

I said, "I'm here to see Skip."

I said, "I'm leaving, I not here
for any trouble"

But before leaving, as I was pulling off
I mumbled to my "clique," Somebody
needs to blow that mother fucker up".

Not even the members of my clique knew
what or who I was talking and mumbling
about. They could only read my lips
and see that I was very upset

I never threatened Mr James Hughes

I never threatened to blow up NARA
I never read NARA interim guide on
violence in the workplace.
I take full responsibity for my
confusing comments, remarks, or
conceived threats. I apologize.

000128

National Archives and Records Administration

MID ATLANTIC REGION
14700 TOWNSEND ROAD
PHILADELPHIA, PENNSYLVANIA 19154-2023
www.archives.gov

August 17, 2004

Mr. Darryl Murray
National Archives and Records Administration
Mid Atlantic Region Northeast (Philadelphia)
14700 Townsend Road
Philadelphia, PA  19154

Dear Mr. Murray:

You are currently displaying posters and other written material
in your work area that are offensive to coworkers, the security
force and management.    These include an article entitled "The
Governments Assault on the Black Family" and postings such as:

 "Who are the real Terrorists?  "Osama Totally Exonerated An
Innocent Man,"

"This center is a non-equal opportunity employer"

 "Worthless losers, nothing ass employees"

This creates a hostile work environment and will not be
tolerated.

This is not the first time that you have engaged in this type of
behavior.  In the past, you have been counseled about scrawling
offensive graffiti on a box that was delivered to the Social
Security Administration who called the Federal Protective Service
to conduct an investigation.

You are ordered to immediately remove (no later than 2:30 p.m.
today) all of these materials from your work area and to never
display them or anything similar in any work area at the National
Archives.  To be clear, you are to display no materials that make
reference to race, religion, political views or that make
disparaging remarks in any way at any location at the National
Archives.

If you fail to follow this order, you will be charged with
insubordination, which will form the basis for removal from the
federal service.

Sincerely,

ELIZABETH M. WASHINGTON
Supervisor, Archives Specialist

cc:   J. McEvoy
      NHH
      file          OFFICE OF REGIONAL RECORDS SERVICE

8-17-04

EXHIBIT

MURRAY-11
11-20-06

FAHRENHEIT 9/11

MICHAEL MOORE

AND REBAK

Did It. What Do It. Who Are The Real Terrorist?

Osama Exonerated (AN INNOCENT MAN)

Totally

Guidance in a Time of Trouble

EXHIBIT
Murray -12
11-20-06





# The Government is away on the shelf family

by Jessica Mardeon

Federal Record Center Is Not An Equal Opportunity/E



RDWRDU

Interiority/Ca
Inflated/Ego
Jealous/Envious
Worthless/Lose
Nothing Ass Cap



**EXHIBIT**

MURRAY-13
11-20-06





None Dare
Call It

a om
Conspiracy

 *National Archives and Records Administration*

MID ATLANTIC REGION
14700 TOWNSEND ROAD
PHILADELPHIA, PENNSYLVANIA 19154-1625
www.archives.gov

September 16, 2004

Mr. Darryl Murray
112 W. Champlost Avenue
Philadelphia, PA 19120

Dear Mr. Murray:

We are consulting with Human Resources Services Division concerning recent misconduct on your part. You will soon be issued a letter concerning this matter.

In accordance with 5 CFR752.604(4), you will be on administrative leave until further notice. This means that you will be paid your regular salary under further notice. At this time, you should turn in your NARA personal identification badge and any Federal Government property you have in your possession.

In order to remain in a paid status, you are ordered to call me every Wednesday at 10:00 a.m. If I am not available when you call, you must leave a telephone number where you can be reached and I will return the call provided there is information that needs to be communicated to you.

If you have any questions about this letter, you may contact Joan Janshego, Human Resources Specialist (Employee Relations) at 301-837-1844.

Sincerely,

JOHN MCEVOY
Director, Record Center Operations
Mid Atlantic Region

_____

Darryl Murray          9-16-04
                        Date

My signature above acknowledges receipt of this letter.

**EXHIBIT**

MURRAY- 14
11-20-06  fH

ROI000288

Feb 08,2005

Memo

To: Joyce Savage
EEOC Counselor
NALC

EXHIBIT

MURRAY - 15
11-20-06 KH

From: Darryl Murray

Date: Feb 08,2005

Subject: Please interfile this memo in my file.

Aug 17, 2004. Letter from John McEvoy
received with immediate compliance. Complaint
letter listed three alleged, offensive comments
concerning race, religion, and politics.

I believe the charge of offensive comments is false.
There are no racial slurs. No religious insults or
politically disparaging remarks about any political
party.

I do believe that John McEvoy and Dave Roland
are harbouring feelings of animosity and revenge
against muslims and the Islamic religions subsequent
to terrorist attack on 9-11.

I do believe that it might have been inappropriate
to display anything promoting Osama bin Laden's
innocence, where patriotic caucasian Americans
might interpret the wrong way. I believed that
the documentary was attempting to exonerate
Osama and reflect Islam in a more positive light.

I further believed that postings would stop
the harassment and persecution I was
experiencing in the workplace.

000238          PAGE NO. 01

DATE Feb 9, 2005

Sept 16, 2004    I received another letter

from John McEvoy placing me on administrative
leave until further notice while Human Resources
was consulted concerning some nonspecific
instance of misconduct.

I believed the letter was referring to an
incident involving a hostile coworker. Knowing
I was innocent of any offense against anyone, I
signed the letter willingly. I viewed the adm. leave
as being a short vacation with pay. I expected
to be called back to work in 2-3 weeks at
most.

I did not know that John McEvoy was accusing
me of making terroristic threats against
him and assistant regional Director Dave Roland.
based upon a picture of the "Predator" figure
from the movie, Predator vs Alien. This movie
was scheduled / scheduled to be released Aug 26,
2004. I had no reason to believe that the
picture would brand me as a terrorist.

Sept 22, 2004    Responding to a 3-day old

voicemail on my cell phone from my coworker
and team partner Warren Hammond a.k.a. Skp.
I stopped pass my job and waited in the
parking lot for Skp to come out for his
lunch break at 11:10. I phoned the job
about 10 minutes before arriving to make sure
Skp was at work. I only made two direct
statements to the security guard.

Statement #1  "I am here to see Skp."
Statement #2  "I didnt come here to cause
trouble, I dont want you to get in trouble."

I stated to my friendly co-workers that I was going to bring Johnnie Cochran and the dream team to NARA to fight and expose racism and discrimination

My co-workers just shook their heads and we smiled and laughed.

I was not looking at or speaking to the guard when I commented "Somebody needs to blow that M-F___ up."

I never said the words building or place

I never said, "I'm here to blow up the place"

I never said, "When I come back I'm blowing up the building"

Security guard James Hughes is exaggerating or outright being untruthful. I do not know what is motive is for being untruthful.

I was angry at being thrown off the property but I would never threaten to blow up a building after 9-11. It is for this reason that I apologize for losing my temper and using the words "blow up" in the same sentence with curse words.

Security guard James Hughes even admits in his affidavit that he told me to watch what I say in his presence. He knew that I was not threatening him on the building. He did not want to report our conversation but he also did not want to get himself in trouble

000240                    PAGE NO. 03